IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GLEN TORRES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:24-CV-1455-MAB |
| | ) |
| ZACHARY MCCLANAHAN, JILIAN | ) |
| CRANE, and BERNARD YOKOM, JR., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Jilian Crane (Doc. 41). For the reasons explained below, the motion is denied at this time. However, Defendant Crane may request a *Pavey* hearing if she wishes to further contest the specific factual issue of whether Plaintiff submitted multiple grievances that went unanswered.

### BACKGROUND

Plaintiff Glen Torres, an inmate of the Illinois Department of Corrections ("IDOC") brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleged in pertinent part that on October 11, 2023, he and the other inmates in Menard's segregation unit were intentionally served bugs in their breakfast (Doc. 1, p. 49; *see also* Doc. 70). Plaintiff further alleged that the officers on duty taunted him and the other inmates about the bugs, and Major Zachary McClanahan told them the bugs were

in response to inmates previously taking the yard hostage (Doc. 1, pp. 49-50). Plaintiff claimed that he suffered from diarrhea and vomiting for four days after the incident, and that McClanahan refused his requests for medical care (*Id.* at p. 50). Plaintiff also alleged that when Nurse Practitioner Crane walked through the gallery, he told her about his symptoms and asked for medical care, but she accused him of acting like a child and instructed him to drink some water and ask the correctional officers for toilet paper (*Id.*).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment conditions of confinement claim against Major McClanahan for serving him oatmeal with bugs in it (Count 1) and an Eighth Amendment deliberate indifference claim against Major McClanahan and Nurse Practitioner Crane for refusing to provide Plaintiff with medical care for his symptoms after eating tainted oatmeal (Count 2) (Doc. 11). He was later permitted to amend his complaint to add a claim against Bernard Yokom, Jr., the Food Supervisor on duty when the oatmeal was served (Doc. 47, pp. 3–5; Doc. 69).

While Defendants McClanahan, Crane, and Yokom all asserted exhaustion as an affirmative defense, (Docs. 20, 24, 83), McClanahan and Yokom later withdrew it (Doc. 59, 60, 88, 89). Crane is the only Defendant who moved forward with filing a motion for summary judgment on the issue of exhaustion (Doc. 41; *see also* Docs. 42, 43).[1] She argues

---

[1] Defendant Crane filed her motion for summary judgment on the issue of exhaustion while Plaintiff's motion for leave to amend his complaint was still pending (*see* Doc. 39, Doc. 41). The Court granted Plaintiff's motion but allowed Defendant Crane's motion for summary judgment to stand despite the amended complaint because the motion was already briefed and Plaintiff's allegations against Defendant Crane remained substantively the same (Doc. 47, p. 6).

that there is only one fully exhausted grievance regarding the oatmeal incident, but it is insufficient to cover Plaintiff's claim against her because it does not name her, describe her, or otherwise mention any conduct attributable to her (Doc. 42, pp. 3, 7). Plaintiff filed a response in opposition to the motion for summary judgment, claiming he filed grievances other than the one Defendant Crane discussed, which all went unanswered (Doc. 46). Crane was later given leave to file a late reply brief (Doc. 60), in which she essentially argues that Plaintiff's story is not credible for a variety of reasons and therefore should not be believed by the Court (Doc. 55).

## **LEGAL STANDARD**

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

The Court ordinarily cannot decide factual disputes on a motion for summary judgment; that is a job for the jury at trial. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021) ("On summary judgment we do not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true"); *Taylor v. City of Milford,* 10 F.4th 800, 806 (7th Cir. 2021) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (citations omitted); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A]

trial is the standard means of resolving factual disputes . . . ."). However, when the factual dispute relates to exhaustion of administrative remedies, the Seventh Circuit has instructed that the dispute should be resolved by the judge as a preliminary matter in an evidentiary hearing, as opposed to waiting for a jury to decide at trial. *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025); *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024).

## DISCUSSION

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *Accord Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("[A] prisoner must comply with the specific procedures and deadlines established by the prison's policy.") (internal quotation marks and citation omitted). The Seventh Circuit requires strict compliance with the exhaustion requirement. *E.g., Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023).

Despite the strict exhaustion requirements, the PLRA "does not demand the impossible," and a prisoner need not exhaust remedies that are "genuinely unavailable or nonexistent." *Smallwood*, 59 F.4th at 313 (citation omitted). Administrative remedies become "unavailable" when, for example, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner

from exhausting." *Pyles*, 829 F.3d at 864 (citation omitted). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Id.* (citation omitted). Because exhaustion is an affirmative defense, "the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood*, 59 F.4th at 315 (citations omitted).

Here, Defendant Crane argued that Plaintiff's grievance records from the ARB contain only one grievance pertaining to the oatmeal incident that was fully exhausted before Plaintiff filed this lawsuit on June 6, 2024: emergency grievance #K4-1023-0744, which was authored and submitted on October 11, 2023, the date that the incident occurred (Doc. 42, p. 3; *see also* Doc. 42-1, pp. 37–41 (records for grievance #0744)). Defendant Crane contends that grievance #0744 is not sufficient to cover Plaintiff's claim against her because it does not name her, describe her, or otherwise mention any conduct attributable to her (Doc. 42, p. 7). The Court agrees; there is simply nothing in the grievance that indicates Plaintiff was complaining about Nurse Crane refusing or otherwise failing to provide him with necessary medical care. *See* 20 ILL. ADMIN. CODE § 504.810(c) (requiring grievances name or at least describe each person "who is the subject of or who is otherwise involved in the complaint"); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (noting that the purpose of exhaustion is to give "a prison 'notice of, and on opportunity to correct, a problem.'") (citation omitted); *Roberts*, 745 F.3d at 234 (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target.").

That is not the end of the matter, however, because Plaintiff contends that he filed other grievances "regarding retaliation, being fed bugs, and denial of medical," which were never responded to (Doc. 46, p. 4, para. 5). Specifically, Plaintiff argued that he had inmates Makial Lucas and Latron Cross file multiple other grievances on his behalf in October 2022 regarding Nurse Crane and the denial of medical treatment, but he never received responses to any of them (Doc. 46, p. 5, para. 10–13). Plaintiff did not provide any copies of these additional grievances, but rather supported his assertions with his own declaration and declarations from Lucas and Cross (Doc. 46, p. 5; *Id.* at pp. 14–16 (Makial Lucas declaration, dated December 21, 2024); *Id.* at pp. 17–18 (Latron Cross declaration, dated December 14, 2024); *Id.* at pp. 19–21 (Plaintiff's declaration, dated December 19, 2024)). According to the declarations, Makial Lucas wrote grievances for Plaintiff on October 11 and October 15, 2023 (Doc. 46, pp. 14–21).[2] Plaintiff said that he had Latron Cross file another grievance for him "as of" October 30th (Doc. 46, p. 21), and Cross said that he "dropped one personally" for Plaintiff on November 1st (*Id.* at p. 17).[3]

As Defendant Crane pointed out, there are a number of issues that make Plaintiff's story questionable (Doc. 55). First, Plaintiff's story regarding his efforts to exhaust has shifted over time, with new information trickling out as this case has progressed (*see* Doc.

---

[2] It is unclear whether the grievance that Lucas wrote for Plaintiff on October 11th is grievance #0744 discussed above, or whether Plaintiff submitted two separate grievances that day (*see* Doc. 55, p. 7).

[3] Plaintiff also asserted in an unsworn statement in his response brief that he "filed another grievance on October 20, 2024" (Doc. 46, p. 5, para. 13). The Court suspects that Plaintiff intended to write 2023, not 2024. At any rate, there is no mention of an October 20, 2023 or 2024 grievance in any of the declarations (*see id.* at pp. 14–21).

55, p. 4; *compare* Doc. 1, p. 4 *with* Doc. 48, p. 3 *and* Doc. 46, pp. 19–21). In short, Plaintiff never explicitly stated that he submitted grievances about Defendant Crane that went unanswered until Crane filed her motion for summary judgment, pointing out that grievance #0744 was insufficient to exhaust against her (*see* Doc. 55, p. 4).

Second, there are times where the information Plaintiff provided in his response brief is inconsistent with or unsupported by the declarations (*see, e.g.*, Doc. 55, p. 4). The Court also notes that, at times, the information Plaintiff provided within his response brief is internally inconsistent.[4] As a result of the discrepancies within and between Plaintiff's briefs and the various declarations, the Court is uncertain just how many grievances Plaintiff is claiming to have submitted that went unanswered, who wrote them, or how they were submitted.

Finally, Plaintiff and his fellow declarants provided few, if any, details about the content of the unanswered grievances (*see* Doc. 55, p. 5; *see also* Doc. 46, pp. 14–21).[5] The most that was said is that one or two of them were "regarding" or "on" Nurse Crane (Doc. 46, p. 5, para. 10, 11; *id.* at 20). For others, it is suggested but not explicitly stated

---

[4] As one example, Plaintiff stated in his response brief that he "had Makial Lucas personally file a grievance for [him] regarding Nurse Crane" because "[he] could not physically do it himself," (Doc. 46, p. 5, para.10), seemingly because he was too ill (*see id.* at p. 4, para. 6, 7). However, later in his response brief, Plaintiff says that he had Lucas file a grievance for him because he "has a writing disability" and Lucas's handwriting is "better and clear" (Doc. 46, p. 8).

[5] Defendant Crane also argued that Plaintiff's assertion about multiple grievances going unanswered is belied by the evidence, which shows that the prison responded to other grievances that Plaintiff submitted before and after the incident (Doc. 55, pp. 4, 6). The Court, however, disagrees that this is a reason to doubt Plaintiff's sworn statement. As the Seventh Circuit previously explained, the fact that the prison responded to and returned other grievances during the relevant time frame "says nothing" about whether the particular grievances at issue were responded to. *Pyles v. Nwaobasi*, 829 F.3d 860, 868 (7th Cir. 2016). It is "at best very week evidence[.]" *Id.*

that they were about Nurse Crane (*see, e.g., id.* at pp. 14–21).

While these issues certainly give the Court reason to question the truth of Plaintiff's story, the Court cannot say—and Defendant Crane does not expressly argue (*see* Doc. 55)—that these issues make Plaintiff's story so "utterly implausible" that it can be rejected outright without holding an evidentiary hearing because "no reasonable person could resolve the material factual disputes in [Plaintiff's] favor." *Whitaker v. Dempsey*, 144 F.4th 908, 914, 917, 918 (7th Cir. 2025) ("The utter-implausibility exception to the general prohibition on resolving factual disputes at summary judgment is reserved for the 'exceptional' and 'extreme' case.") (citations and internal quotation marks omitted). *See also Jackson,* 105 F.4th at 958 ("For the district court to [find] for the prison officials without first holding a Pavey hearing, the prison officials . . . must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies.").

It is possible that Plaintiff concocted his story on the fly in an effort to create an issue of material fact, but it is not manifestly apparent. Furthermore, it is not outside the realm of possibility that Plaintiff may be able to explain the variations and inconsistencies in his story. On the other hand, it may well be that Plaintiff's contentions do not withstand scrutiny on cross-examination at a *Pavey* hearing. Ultimately, the concerns with and variations in Plaintiff's story amount to an issue of credibility. *But see Whitaker*, 144 F.4th at 918 ("[I]n rare cases, 'a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury.'") (quoting *Rojas v. Roman Catholic Diocese of*

*Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)) (emphasis in original). And the Court cannot decide whether to believe or disbelieve Plaintiff based on the papers alone; it can only do so after conducting an evidentiary hearing. *Ingram v. Watson*, 67 F.4th 866, 871 (7th Cir. 2023) ("[T]he court also cannot disbelieve statements in affidavits without holding a hearing."); *Roberts*, 745 F.3d at 234 (explaining it that credibility determinations should not be made prior to the district court conducting an evidentiary hearing). Consequently, Defendant Crane's motion for summary judgment is denied at this juncture.

## CONCLUSION

Defendant Jilian Crane's motion for summary judgment on the issue of exhaustion (Doc. 41) is **DENIED** at this time**.** However, if Defendant Crane wants to continue to pursue the affirmative defense of failure to exhaust administrative remedies with respect to the issue of whether Plaintiff submitted grievances that went unanswered, she must request a *Pavey* hearing within 14 days of this Order. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case. Alternatively, the parties may request that this case be referred for alternative dispute resolution.

**IT IS SO ORDERED.**

**DATED: January 7, 2026**

s/ Mark A. Beatty
MARK A. BEATTY
**United States Magistrate Judge**